# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee, | Case No. 18 C 2372 |
| *Plaintiffs*, | Judge Virginia M. Kendall |
| v. | |
| RAIL TERMINAL SERVICES LLC, a Delaware limited liability company, | |
| *Defendant*. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health Fund"), and Arthur Bunte, as trustee of the Funds, bring this action for unpaid contributions against Rail Terminal Services LLC ("Rail Terminal") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Counts I and II of the Complaint seek delinquent contributions owed by Rail Terminal stemming from a dispute of whether and when Rail Terminal withdrew from the Funds, while Count III pursues additional contributions following an audit of Rail Terminal records. The parties filed Cross-Motions for Summary Judgment (Dkts. 28, 37) and the Court heard oral argument on the Motions. (Dkt. 62). Plaintiffs

seek summary judgment on Count I, or alternatively on Count II of their Complaint, but do not move on Count III. Rail Terminal argues for summary judgment on the merits of Counts I and II and a dismissal of Count III as premature. For the reasons stated within, the parties' Motions for Summary Judgment are denied and Plaintiffs' claims are dismissed without prejudice pending the conclusion of related alternative dispute resolution regarding withdrawal liability.

## BACKGROUND

The following facts are not in dispute. Defendant Rail Terminal is a shipping logistics company that employs hundreds of unionized workers, including members of Teamsters Local 745 in Mesquite, Texas. (Dkt. 40, ¶¶ 3-4). On May 1, 2014, Rail Terminal and Local 745 entered into a collective bargaining agreement ("CBA") whereby Rail Terminal would make contributions to the Pension Fund on behalf of the Local 745 members. (Dkt. 49, ¶ 8). The CBA provided that the agreement would be effective from April 1, 2013 until March 31, 2017, continuing on a year to year basis "unless written notice of desire to cancel or terminate the Agreement is served by either party upon the either [sic] at least sixty (60) days prior to date of expiration." (*Id.* at ¶ 9). When notice of cancellation or termination is not served, and the parties instead wish to negotiate revisions, "either party may serve upon the other a notice at least sixty (60) days prior to March 31, 2017." (*Id.* at ¶ 10). In the event the parties inadvertently failed to provide timely notice of modification or termination, "the expiration date of [the CBA] shall be in the sixty-first (61) day following such notice." (Dkt. 40, ¶ 8). Also on May 1, 2014, Rail Terminal and Local 745 entered into a

participation agreement which established the terms of Rail Terminal's participation in the Pension Fund and subjected them to the terms of the Pension Fund's Trust Agreement. (Dkt. 49, ¶¶ 11-12).

On December 2, 2016, Local 745 sent Rail Terminal a letter expressing a desire "to negotiate terms of employment, conditions of employment, benefits, wages and any other items that become an issue in negotiations." (*Id.* at ¶ 21). The letter also stated that Local 745 "does not wish to terminate the present agreement until such time as a new agreement is reached and agreed upon by the parties or until such time as the parties reach an impasse in the negotiations." (*Id.*). Local 745 also sent notice to Rail Terminal and the Federal Mediation & Conciliation Service stating, "that written notice of proposed termination or modification of the existing collective bargaining contract was served upon the other party to this contract." (Dkt. 40, ¶ 10). A Pension Fund representative emailed Rail Terminal on January 11, 2017 directing counsel for Rail Terminal to contact a Pension Fund manager "regarding Rail Terminal's intent to withdraw and discussions regarding a settlement." (Dkt. 56, ¶ 1). On January 25, 2017, Rail Terminal declared an impasse in its CBA negotiations with Local 745. (Dkt. 40, ¶ 12). Around this time, Rail Terminal asked Pension Fund representatives to provide Rail Terminal with procedures governing withdrawal liability obligations. (*Id.* at ¶ 14; Dkt. 56, ¶ 3).

Negotiations between Rail Terminal and Local 745 regarding the CBA eventually resumed. (*Id.* at ¶ 15). Rail Terminal and Local 745 entered into a Letter of Understanding on March 31, 2017. (Dkt. 49, ¶ 27). The Letter of Understanding

stated that "[Rail Terminal and Local 745] agreed to stop requiring contributions to the 'Central States Pension Fund' and any continuance of contributions, and agreed for [Rail Terminal] to stop participating in the 'Central States Pension Fund.'" (Dkt. 1-3). The Letter of Understanding was signed on March 31, 2017, but was "contingent on the ratification of the complete Collective Bargaining Agreement" and "[i]n the event the CBA is not ratified by the membership, this agreement is null and void." (*Id.*). Rail Terminal stopped making contributions to the Pension Fund after March 31, 2017. (Dkt. 40, ¶ 19). Local 745's members voted to ratify the new CBA in early April of 2017. (Dkt. 49, ¶ 28). The Pension Fund received a copy of the signed Letter of Understanding by May 15, 2017. (Dkt. 56, ¶ 8). The new CBA was signed and fully executed on June 7, 2017. (Dkt. 40, ¶ 20). A copy of this signed CBA was received by the Pension Fund on June 9, 2017. (Dkt. 49, ¶ 30). After the Pension Fund received the executed CBA, it informed Rail Terminal that its obligation to contribute to the Pension Fund continued until March 31, 2018, due to insufficient notice of termination. (Dkt. 40, ¶ 21). In the alternative, the Pension Fund asserted that Rail Terminal owed contributions through June 9, 2017, the date the Pension Fund received the executed CBA. (*Id.*). Rail Terminal then filed a grievance with Local 745 to determine whether Rail Terminal was required to make contributions to the Pension Fund after March 31, 2017. (*Id.* at ¶ 22).

In November of 2018, the Pension Fund sent Rail Terminal a withdrawal liability demand asserting that Rail Terminal owed $42,921,389.83 in withdrawal liability based on contributions owed for the 2017 calendar year. (Dkt. 56, ¶ 15).

Included in the demand was a copy of the Pension Fund's withdrawal dispute resolution rules which prescribes that:

> [a]ny dispute concerning whether a complete or partial withdrawal has occurred … will be resolved in the following manner: First an employer may request that the Central States Pension Fund review the dispute; second, if the Central States Pension Fund's review of the dispute does not satisfy the employer, the employer may initiate arbitration of the dispute; third, following arbitration, either the employer or the Central States Pension Fund may initiate federal litigation…

(*Id.* at ¶ 16). On February 15, 2019, Rail Terminal informed the Court that the dispute resolution process listed above had begun. (Dkt. 64).

## **LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts will "construe all factual disputes and draw all reasonable inferences in favor of…the non-moving party." *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1614, 197 L. Ed. 2d 708 (2017). In order to defeat the moving party's showing that a trial is not necessary, the non-moving party bears the burden of persuasion to "'make a showing sufficient to establish the existence of an element essential to that party's case.'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The Court "limit[s] its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Anderson,* 477 U.S. at 248; *Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal quotations omitted).

## DISCUSSION

### I. Characterization of Plaintiffs' claims and the Court's jurisdiction

As a preliminary matter, the Court must first assess whether it has jurisdiction to rule on Plaintiffs' claims. "The district courts of the United States, as we have said many times, are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994)). Generally, ERISA and the MPPAA reflect a "strong preference for arbitration" over litigation. *Rootberg v. Central States, Southeast and*

*Southwest Areas Pension Fund,* 856 F.2d 796, 801 (7th Cir. 1988). Here, Plaintiffs argue that this Court has exclusive jurisdiction under 29 U.S.C. § 1132(e)(1), which governs when a party is seeking delinquent contributions. To the contrary, Rail Terminal characterizes this action as one involving withdrawal liability and therefore subject to mandatory arbitration. *See* 29 U.S.C. §§ 1381, 1401.

Plaintiffs' Complaint certainly purports to proceed under a theory of delinquent and unpaid contributions, but when undertaking more than a cursory review of the pleadings it becomes evident that the dispute is centered on Rail Terminal's withdrawal liability. Indeed, the Complaint seems to contemplate this fact by pleading Count II in the alternative. Count II seeks contributions, not for another year, but only for the period of time between the alleged renewal of the preexisting CBA and the day the Pension Fund received an executed copy of the new CBA. No amount of artful pleading should be able to recharacterize the relief Plaintiffs truly seek. *See Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1491 (7th Cir. 1996); *see also Leu v. Norfolk & W. Ry. Co.,* 820 F.2d 825, 830-31 (7th Cir. 1987) ("Appellants cannot, through 'artful pleading,' disguise claims that are within the jurisdictional scope of the RLA … The courts have correctly viewed such attempts as 'end runs around the Railway Labor Act's policy of channeling employment disputes to arbitration.'") (internal citations and parentheticals omitted). As with *Leu,* the Court here views the operative Complaint as a mischaracterization of the actual relief sought. Though facially the Complaint is styled as seeking delinquent contribution claims, ruling on Counts I and II would

make it inescapable that the Court would have to determine whether and when Rail Terminal withdrew from the Pension Fund. *See e.g., Cent. States Se. & Sw. Areas Pension Fund v. Metcalf Moving & Storage Co.,* 1996 WL 341405, at *3 (N.D. Ill. June 18, 1996) (holding that the presented contribution and withdrawal questions, while in theory separate and distinct, had no practical difference and "[b]oth revolve[d] around a single question"). Such a ruling would be inappropriate and inconsistent with statutory mandates and governing precedent. Therefore, the Court recharacterizes Counts I and II as claims seeking withdrawal liability and addresses them accordingly.

29 U.S.C. § 1381 governs an employer's withdrawal liability in the event of a complete or partial withdrawal. And § 1401 unequivocally states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." What is more, the Pension Fund's own policies delineate that withdrawal disputes should be resolved through arbitration procedures. (Dkt. 56, ¶ 16). There is little question that "[t]he dispute over the withdrawal date was clearly subject to the MPPAA's mandatory arbitration provisions." *Robbins v. Admiral Merchants Motor Freight, Inc.,* 846 F.2d 1054, 1057 (7th Cir. 1988); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat., Inc.,* 253 F.3d 1011, 1014 (7th Cir. 2001); *Robbins v. Lady Baltimore Foods, Inc.,* 868 F.2d 258, 264 (7th Cir. 1989) ("[T]he question of an employer's withdrawal date from a pension fund is one which is subject to mandatory arbitration under 29 U.S.C. § 1401(a)(1)."); *Trustees of the*

*Suburban Teamsters of N. Illinois Pension Fund v. Nagel Trucking & Materials, Inc.,* 2011 WL 6792767, at *4 (N.D. Ill. Dec. 22, 2011) ("[T]he parties dispute the date of Nagel's withdrawal from the Fund. This dispute is governed by §§ 1383 and 1392, which are expressly included among the sections for which arbitration is required. … Thus, the plain language of § 1401(a) requires that the arbitrator, not this Court, determine Nagel's date of withdrawal."). Even the seemingly innocent threshold proposition of determining whether Rail Terminal withdrew from the Funds would be improper. *Tsareff v. ManWeb Servs., Inc.,* 794 F.3d 841, 849-50 (7th Cir. 2015) (endorsing the proposition that the question of whether or not an employer withdrew from a plan is a question reserved solely for an arbitrator).

Having determined that arbitration is the proper course for this matter to proceed, Plaintiffs posit that Rail Terminal has waived its right to arbitration by participating in the present litigation. *See* (Dkt. 50, 12-15). In support of this proposition, Plaintiffs rely on *Cabinetree of Wis., Inc. v. Kraftmade Cabinetry, Inc.* 50 F.3d 388, 390 (7th Cir. 1995). There, the court upheld the district court's decision that proceeding in federal litigation waived defendant's right to arbitrate the matter. Importantly, the arbitration in *Cabinetree* was a creature of a private contract between the parties and not granted by statute. 50 F.3d at 389. This distinction is meaningful, whereas here, the right to arbitrate is the result of a statutory scheme exhibiting a strong preference, and indeed a mandate, that certain claims be submitted to arbitration. Several additional factors undercut Plaintiffs' argument. First, Rail Terminal did not initiate this litigation. In fact, Rail Terminal originally

sought resolution of this dispute through contractually prescribed alternative dispute resolution. (Dkt. 40, ¶ 22). "[N]othing prevents a defendant from filing an answer that demands arbitration and offers other reasons why plaintiffs should not receive judicial relief." *Cent. Illinois Carpenters Health & Welfare Tr. Fund v. Con-Tech Carpentry, LLC,* 806 F.3d 935, 938 (7th Cir. 2015).

Additionally, contrary to Plaintiffs' claims, Rail Terminal did not raise the issue of jurisdiction and arbitration for the first time in their Response/Reply brief. As an affirmative defense in its Answer to the Complaint, Rail Terminal stated that "Plaintiffs' claims are subject to, and should be dismissed in favor of, an alternative dispute process including arbitration, which process began before Plaintiffs initiated the instant litigation." (Dkt. 16); *see e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Goggin Truck Line, Inc.,* 140 F.R.D. 362, 367 (N.D. Ill. Dec. 30, 1991) ("Ordinarily, raising the issue of ADR in an answer is sufficient to preserve the defense."). Again, on June 11, 2018, Rail Terminal contested jurisdiction in the parties' Joint Status Report. (Dkt. 19). This view was restated in its Responses to Plaintiffs' Statement of Undisputed Material Facts. (Dkt. 49, 4-5) ("RTS disputes that this Court is the appropriate forum for this dispute. [Plaintiffs'] claims turn on when RTS withdrew from the [Pension Fund.] …arbitration is the appropriate forum for disputes regarding a pension plan's determination of an employer's withdrawal date.").

Finally, Rail Terminal has not wholly abandoned its rights to arbitrate the issue, but instead has timely initiated the alternative dispute resolution process. (Dkt. 64). In response, Plaintiffs do not argue that this conduct was untimely.

Instead, Plaintiffs rely on their position that the issues in this litigation relate to unpaid contributions (Dkt. 65), a position which was discarded above. Even if it could be said that Rail Terminal's initiation of arbitral procedures was untimely, the doctrine of equitable tolling would extend the time period for seeking arbitration. *See Trustees of Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transp., Inc.*, 888 F.2d 1161 (7th Cir. 1989). Given the strong preference for arbitration over litigation present in the MPPAA, the Court finds that Rail Terminal has fallen far short of waiving its right to arbitrate the present dispute.

Finally, Rail Terminal asks for its fees and costs in defending this action due to the alleged bad faith of Plaintiffs. 29 U.S.C. § 1451(e) provides for fees only to the prevailing party and § 1132(g) provides the Court with the discretion to award reasonable fees to either party. Rail Terminal's request is denied. Plaintiffs' claims, though mischaracterized, were not made in bad faith and Rail Terminal provides no other specific justification for such an award.

**II. Validity of the new collective bargaining agreement**

While the Court is not able to rule on whether Rail Terminal withdrew from the Funds and, if so, when that withdrawal took place, issues concerning contract formation fall squarely within the Court's authority. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741-42 (7th Cir. 2010). At a bare minimum, the parties agree that the Court can determine whether and when Rail Terminal and Local 745 entered into a new collective bargaining agreement as a matter of law. (Dkt. 66). As foreshadowed earlier, making such a determination inherently presents problematic questions of

this Court's jurisdictions as issues regarding the CBA, Rail Terminal's withdrawal, and what remaining contributions are owed, are inextricably interwoven. However, the Court need not wade into those murky waters as the parties, despite devoting significant attention to the topic, agree as to when the new CBA was executed. It is undisputed that the Letter of Understanding between Rail Terminal and Local 745, which eliminated Rail Terminal's contribution obligations was signed on March 31, 2017. (Dkt. 49, ¶ 27). Crucially, the agreement was contingent on approval by the Local 745 members. (Dkt. 1-3); *Granite Rock Co. v. International Broth. of Teamsters,* 561 U.S. 287, 304 (2010) ("…the date on which an agreement was ratified determines the date the agreement was formed…"). Local 745 ratified the CBA in early April 2017 and this new CBA was signed and fully executed on June 7, 2017. (Dkt. 49, ¶ 28); (Dkt. 40, ¶ 20). While there is no dispute that Rail Terminal and Local 745 entered into a new and valid CBA that did not require Rail terminal to contribute to the Pension Fund, the Court cannot and does not opine on the significance of this agreement in relation to its effect on withdrawal from the Funds.

**III. Additional contributions sought in Count III**

Count III suffers the same fate as the previous counts. Following Plaintiffs' audit of Rail Terminal, Count III seeks additional contributions that were allegedly not made dating back to December 2014. Again, instead of being the straightforward delinquent contribution claim that Plaintiffs characterize it as, Count III seeks recovery for contributions due during the disputed time frame when Rail Terminal may have already withdrawn from the Funds. (Dkt. 1, ¶ 64-66, 69). Additionally,

Plaintiffs represent that the period of time being audited has been further extended—the results of which are not before the Court at this time. (Dkt. 49, ¶ 29). As a result of the ongoing audit and genuine disputes of material fact regarding the amount owed and appropriate timeframe, Count III is not ripe for summary judgment. Rail Terminal's Motion for Summary Judgment on Count III is denied.

## **CONCLUSION**

For the reasons stated within, the parties' Cross-Motions for Summary Judgment are denied. Plaintiffs' delinquent contribution claims are dismissed without prejudice pending the resolution of the withdrawal liability questions in the proper forum—arbitration.

_____
Virginia M. Kendall
United States District Judge

Date: May 31, 2019